539 So.2d 1049 (1989)
Raymon A. WILLIAMS
v.
STATE of Mississippi.
No. 58192.
Supreme Court of Mississippi.
February 27, 1989.
*1050 Barry W. Gilmer, Gilmer Law Firm, Jackson, for appellant.
Mike Moore, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and ZUCCARO, JJ.
HAWKINS, Presiding Justice, for the Court:
On December 11, 1986, Raymon Andrew Williams was convicted in the circuit court of the First Judicial District of Hinds County under MCA § 97-5-23 (1972) of gratification of lust and sentenced to ten years in the Mississippi Department of Corrections. He has appealed to this Court and, finding error, we reverse and remand for a new trial.
Although this case involves numerous assignments of error, we need only address four factors. First, the use of anatomically correct dolls at trial; second, the purpose of rebuttal testimony; third, the necessity of accepting a trial court's ruling; and fourth, the impropriety of an attorney telling a witness what he may or may not testify to at trial.
The other assignments of error will not occur on retrial and, accordingly, we need not address them.

FACTS AND LAW
Under the terms of a custody agreement, Williams had visitation with his five-year-old daughter from December 25, 1985, through December 27, 1985. On March 31, 1986, Williams' wife, from whom he was separated, signed a sworn affidavit accusing Williams of having sexually molested the child on December 26, 1985, and on April 1, 1986, Williams was arrested.

I. DID THE TRIAL COURT ERR IN ALLOWING THE CHILD TO USE ANATOMICALLY-CORRECT DOLLS WHEN TESTIFYING BEFORE THE JURY?
The child testified at trial before the jury and used anatomically-correct dolls when describing and demonstrating how the abuse occurred, to which Williams strenuously objected. The use of anatomically-correct dolls during a trial is a matter of discretion with the trial judge although, as stated in Murriel v. State, 515 So.2d 952 (Miss. 1987), great care and caution should be exercised when making this determination. Having carefully studied this record, we find no error in the use of these dolls at trial.

II. DID THE TRIAL COURT ERR IN ALLOWING THE STATE'S EXPERT, DURING REBUTTAL, TO STATE AN OPINION ON A SUBJECT MATTER WHEN THE DEFENSE EXPERT'S OPINION ON THE SAME SUBJECT MATTER HAD EARLIER BEEN PRECLUDED?
Dr. Donald Guild, a psychiatrist who had interviewed the child testified for the defense as to, among other things, the child's propensity for truthfulness. Dr. Guild was not, however, for reasons of *1051 relevancy, allowed to testify as to the propensity for truthfulness by the child's brother, whom Dr. Guild had interviewed and who also had allegedly been sexually abused by Williams.[1] Subsequently, Dr. Maude Wright, who had likewise interviewed both children, was allowed to testify in rebuttal for the State as to her opinion of the brother's propensity for truthfulness. This, obviously, was error. The purpose of rebuttal testimony is to explain, repel, counteract or disprove evidence by the adverse party. See, United States v. Delk, 586 F.2d 513 (5th Cir.1978); Roney v. State, 167 Miss. 827, 150 So. 774 (1933); see generally, 23 C.J.S. Criminal Law, § 1050 (1961).
In light of the preclusion of Dr. Guild's opinion, it was reversible error to allow the opinion of Dr. Wright in rebuttal on the same subject matter. In addition, while we do not address the issue in this case, opinion testimony as to a witness's truthfulness is of dubious competency.

III. DID THE TRIAL COURT ERR IN ALLOWING THE PROSECUTORS TO REPEATEDLY REFER TO A VIDEOTAPE NOT IN EVIDENCE?
During cross-examination of Dr. Guild, the district attorney moved to introduce a video tape made of the child in the office of Dr. Brenda Chance, a social worker who had been counseling the child for several months prior to trial. This motion was overruled and the jury was instructed to disregard any references to the video tape. Thereafter, out of the jury's presence, the State again moved to introduce the video tape of the child in order to rebut Dr. Guild's testimony regarding her ability to be truthful. The trial court, however, finding that the tape had not been listed on the discovery form in accordance with Uniform Criminal Rule 4.06, refused to allow the tape to be shown to the jury.
Subsequently, the prosecutors on numerous occasions moved for the introduction of the video tape, in blatant disregard of the trial court's ruling of inadmissibility. Each motion was denied. Williams now argues he was prejudiced and denied a fair trial due to the prosecutors' numerous remarks about and motions to introduce the video tape, which led the jury to perceive that actions by the defense counsel kept incriminating evidence from them. We agree, and in accordance, find the following, stated in 23A C.J.S. Criminal Law, §§ 1081, 1087 (1961):
The prosecuting attorney must conduct the trial in accordance with the rules of law and the rulings of the trial judge during the trial, particularly where accused is defended as a poor person. He should not engage in undignified argument and conduct, and should at all times maintain a proper attitude toward the jury, and not say or do anything which might improperly affect or influence the jury ...

Argument as to Admissibility. The prosecuting attorney may argue the admissibility of proposed evidence; but such right does not extend so far as to permit counsel to argue and remonstrate with the court or to insist that he has the right to do something or to pursue a line of questioning after the trial judge has ruled against his contentions, and he should not attempt to influence the minds of the jurors improperly under the guise of arguing on the admission of incompetent evidence.
Further, in 88 C.J.S. Trials, § 162 (1955), the following is stated:

Acceptance of court's rulings. Counsel should accept the court's rulings on the admission of evidence, and it is highly improper for him to persist in asking a question or questions, or to adhere to questioning along the same line, where the court has already ruled against him, unless the question was excluded as being merely out of time, or unless the court was not positive and certain in its rulings.
*1052 Additionally, it is noted that although the jury was instructed to disregard the remarks regarding the video tape at the first mention thereof, it cannot be said with confidence that the repeated subsequent references to the video tape did not influence the jury. Therefore, we find that the prosecutors' actions denied Williams a fair trial and amounted to reversible error.

IV. DID THE TRIAL COURT ERR IN FAILING TO GRANT WILLIAMS' MOTION FOR A MISTRIAL DUE TO HAND SIGNAL COMMUNICATION BETWEEN THE PROSECUTOR AND A WITNESS BEING EXAMINED BY DEFENSE COUNSEL?
During the cross-examination by the defense counsel of a police officer, the following events occurred:
Q. Do you know why that the two charges were not made at one time? Do you have any idea?
A. Yes, sir, I do.
BY MR. GILMER:
Mr. Peters, I don't think it's proper for y'all to 
BY MR. PETERS:
If it please the Court, we told him not to give this information, and I'm not telling him that he can give that information 
BY MR. GILMER:
This is completely improper.
BY MR. PETERS:
 because Defense Attorney has opened that up.
BY THE COURT:
Just a moment. Yes, let's do not coach the witness, please.
BY MR. PETERS:
I just had told him not to answer something unless Defense Attorney opened the door. He just opened the door, and I just 
BY MR. GILMER:
Your Honor, we move the Court for a mistrial. This is highly improper. Mr. Peters has been doing this 
BY THE COURT:
Just a moment. Just a moment. Your motion will be overruled. Now do you want the witness to answer the question? If you wish, rephrase your question.
BY MR. GILMER:
We ask that the jury be retired for a moment, Your Honor.
BY THE COURT:
Step into the jury room, please. [JURY EXCUSED. THE FOLLOWING PROCEEDINGS WERE HAD IN THEIR ABSENCE:]
* * * * * *
BY MR. GILMER:
Now at this point we are examining a critical, material witness; and the District Attorney, through hand motions or mimicking seeks to control or influence in some manner this witnesses' testimony. We believe this, in combination with all else that has occurred during the course of trial, and we believe it's all done in a zealous attempt, maybe admirable in some cases, but not in this one, to prosecute an alleged crime. We believe it all operates to materially diminish the defendant's right to both substantive and procedural due process.
BY THE COURT:
[D]o you wish to make a response?
BY MR. PETERS:
Yes, sir, I would like to make a response... .
[W]ith regard to the motion that I made with my hands, what I made was a motion for him to go ahead and now give the information that the Court had previously ruled as inadmissible, that being what he determined, why he determined the probable cause for the arrest. The Court had previously stated that he could not say what Brenda Chance had told him. The Defense Attorney then said, "You wanted him back in jail, why didn't you arrest him again?" And I told him he could now go ahead and say that. That was my sole purpose for my telling him that he could go ahead with that testimony.

*1053 BY THE COURT:
All right... . The motion for mistrial will be overruled. You may ask the Jury to return to the jurybox.
Williams, having properly preserved this point for appeal, now requests a reversal and argues that the "coaching" of the witness by the district attorney denied him a fair trial.
We agree. An attorney should never signal to a witness, regardless of how innocent the action may be, because this leaves with the jury the impression of covertness and partiality between the witness and the signalling party. If, during examination and due to some unusual circumstances, an attorney wishes a witness to be instructed, he should address his request to the trial judge. Therefore, we find that these actions by the prosecutor also denied Williams a fair trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN and ZUCCARO, JJ., concur.
ANDERSON, J., concurring in part and dissenting in part.
PITTMAN, J., not participating.
ANDERSON, Justice, concurring in part, dissenting in part:
I agree that this case should be reversed on Assignment of Error No. II. With respect to Assignments of Error III and IV, I respectfully dissent. For some reason the majority feels that our trial bench is incapable of conducting trials. We should leave the matters contained in Assignments of Error No. III and IV to the sound discretion of our capable trial bench.
NOTES
[1] On April 3, 1986, Williams was also arrested for the sexual molestation of his son. However, this trial dealt only with the charge of molestation of the daughter.