734 So.2d 284 (1999)
Joe FUENTE, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00736 COA.
Court of Appeals of Mississippi.
February 9, 1999.
*285 Samuel H. Wilkins, Jackson, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
BEFORE BRIDGES, C.J., PAYNE, and SOUTHWICK, JJ.
BRIDGES, C.J., for the Court:
¶ 1. Joe Fuente, Jr. was convicted of the crime of possession of more than one kilogram of marijuana with the intent to distribute by the Circuit Court of Hinds County and sentenced to twenty years in the custody of the Mississippi Department of Corrections with ten years suspended. On appeal, he asserts (1) there was insufficient evidence to establish he knowingly or intentionally possessed the marijuana, as required under Miss.Code Ann. § 41-29-139(a)(1) (Supp.1998); and (2) the trial court erred in allowing testimony and evidence of criminal acts not alleged in the indictment.

FACTS
¶ 2. On October 6, 1993, at 10:00 p.m., Deputy Richard Thomas, an officer assigned with the canine division and criminal patrol of the Hinds County Sheriff's *286 Department, was on routine patrol on Interstate 20 eastbound, when he observed a white Horizon traveling at an excessive speed passing another car. Deputy Thomas pulled in behind the Horizon and followed the vehicle, clocking the car traveling sixty-five miles an hour in a fifty-five mile an hour zone. The officer turned on his blue light, and the driver of the car, Charles Lee Moore, Jr., immediately pulled over to the shoulder of the interstate.
¶ 3. Upon approaching the vehicle, Deputy Thomas requested Moore's driver's license and asked if Moore owned the car. Moore identified the passenger, Joe Fuente, Jr., as the owner. Deputy Thomas confirmed Fuente was the owner and asked to see the insurance paperwork on the car. As Fuente opened the glove box to retrieve the requested information, Deputy Thomas saw two boxes of ammunition and asked Fuente if there were any guns in the car. Fuente answered affirmatively. Deputy Thomas requested and received permission to get the guns out of the vehicle.
¶ 4. While Moore and Fuente waited at the front of the patrol car, Deputy Thomas entered Fuente's car from the passenger side, leaned down and reached under the seat to get the guns where Fuente had indicated they were located. As he did so, Deputy Thomas detected the strong smell of marijuana.
¶ 5. Deputy Thomas found a .0380 caliber pistol and a nine millimeter pistol under the seat. After unloading one firearm, he called in the serial numbers on the handguns and placed both in his patrol car. The officer then took his canine, Brigg, out of the patrol car and led him around Fuente's vehicle. Brigg, an aggressive alert dog, scratched on the rear doors of the car indicating the dog had detected a controlled substance. Deputy Thomas testified when the dog alerted Fuente and Moore looked at each other but said nothing. Deputy Thomas returned the dog to the patrol unit.
¶ 6. Fuente refused the officer's request to search the car. When Deputy Thomas asked if Fuente had anything to hide inside the car, Fuente responded, "You are just not looking inside my car." The officer noted Moore and Fuente were becoming increasingly fidgety and belligerent and called for backup.
¶ 7. When the backup officers arrived, Deputy Thomas searched the vehicle and uncovered five bundles of marijuana secreted inside the rear door panels. Upon discovering the first bundle, Deputy Thomas showed it to Moore and Fuente. The two men dropped their heads and looked at each other. At no time did Fuente indicate the presence of the marijuana in the door panels of the car was unknown to him. More than $400 was recovered from Fuente's person. Fuente refused to sign a receipt for the money recovered.
¶ 8. Fuente was indicted for possession of more than one kilogram of marijuana with intent to distribute in violation of Miss.Code Ann. § 41-29-139 (Supp.1998). At trial, the State put on evidence of marijuana and elicited testimony of all of the aforementioned events concerning the stop, the search of the vehicle, and the arrest. Patricia Barnes, a forensic scientist specializing in drug analysis employed with the Jackson Police Department, testified the seized bundles contained about two kilograms (approximately five pounds) of raw marijuana. Deputy Thomas testified that based on his experience the recovered marijuana was more than one person would be able to consume and the packaging was consistent with that used by persons transporting large amounts of marijuana. He estimated the street value of the marijuana was between $1,500 to $2,500 a pound.
¶ 9. At the end of the State's case, Fuente moved for a dismissal of the charge asserting the State had failed to prove a prima facie case against him of possession of marijuana with intent to distribute because there was no direct testimony *287 that Fuente knew the marijuana was hidden in his automobile. The trial court denied the motion.
¶ 10. Taking the stand, Fuente testified Moore hired him for $200 plus expenses to drive Moore from Kerrville, Texas to Mississippi. Fuente loaned his car to Moore to load personal items into it the day before they were to leave. Fuente testified he had no knowledge of the marijuana being in his vehicle. Two witnesses, Larry Creech and Valerie Bario, testified they saw Moore conceal the marijuana inside the door panels of Fuente's car outside the presence of Fuente the afternoon before Fuente and Moore traveled to Mississippi. Neither told Fuente what Moore had done.
¶ 11. At the close of the evidence, Fuente again moved for a dismissal of the charge which was denied by the trial court.
¶ 12. After deliberations, the jury returned a verdict of guilty as charged. Fuente was sentenced to twenty years in the custody of the Mississippi Department of Corrections with ten years suspended. Thereafter, Fuente moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial which was overruled. Aggrieved, Fuente appealed alleging (1) the evidence was insufficient to prove he knowingly possessed marijuana, and (2) the trial court erred in allowing testimony of the partially smoked cigarette and rolling papers found in the vehicle.

ARGUMENT AND DISCUSSION OF LAW

I. WAS THE EVIDENCE SUFFICIENT TO SUPPORT FUENTE'S CONVICTION?
¶ 13. Fuente filed a motion in the trial court for a judgment notwithstanding the verdict or, in the alternative, for a new trial, attacking both the sufficiency and the weight of the evidence supporting his conviction. The trial court denied the motion. On appeal, the only issue Fuente raises is that the evidence was insufficient to support his conviction.
¶ 14. The standard of review in reviewing issues of sufficiency of the evidence was set out by the Mississippi Supreme Court in McFee v. State, 511 So.2d 130, 133-34 (Miss. 1987):
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidencenot just that supporting the case for the prosecutionin the light most consistent with the verdict. We give prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
¶ 15. Fuente was convicted under Miss. Code Ann. § 41-29-139 (Supp.1998), which declares "it is unlawful for any person knowingly or intentionally ... [t]o sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance;...." Fuente alleges the State failed to prove Fuente knowingly possessed the marijuana found secreted within the door panels of his automobile.
¶ 16. It is undisputed that Fuente was the owner of the vehicle in which the marijuana was discovered. As the owner of the vehicle where the contraband was found, Fuente is presumed to have constructive possession of the marijuana.
*288 ¶ 17. "Constructive possession allows the prosecution to establish possession of contraband when evidence of actual possession is absent." Roberson v. State, 595 So.2d 1310, 1319 (Miss. 1992).
What constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of "possession" is a question which is not susceptible of a specific rule. However, there must be sufficient facts to warrant a finding that the defendant was aware of the precedence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown establishing that the drug involved was subject to his dominion and control. Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.
Arnett v. State, 532 So.2d 1003, 1011-12 (Miss. 1988) (quoting Curry v. State, 249 So.2d 414, 416 (Miss. 1971)).
¶ 18. The presumption that Fuente had constructive possession of the marijuana is rebuttable. "[O]ne in possession of premises upon which contraband is found is presumed to be in constructive possession of the articles, but the presumption is rebuttable." Powell v. State, 355 So.2d 1378, 1379 (Miss. 1978). According to Fuente, he loaned his car to Moore the day before the fateful trip to Mississippi, giving Moore the opportunity to hide the bundles of marijuana in the vehicle without Fuente's knowledge. Thus, the car was not in the exclusive control and possession of Fuente and, under the rule stated in Powell, additional incriminating facts must connect Fuente with the contraband.
We have held that where contraband is found upon premises not in the exclusive control and possession of the accused, additional incriminating facts must connect the accused with the contraband. Where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband.
Id.
¶ 19. The supreme court found the State's failure to show the necessary additional incriminating circumstances justifying constructive possession of the contraband required reversal of the defendant's drug conviction in Ferrell v. State, 649 So.2d 831 (Miss. 1995). Ferrell had been stopped for speeding with a suspended driver's license. After taking Ferrell to the patrol car, the officer returned to Ferrell's car to get the car keys and found a matchbox containing cocaine between the seats. Id. at 832. The Ferrell court stated that Ferrell, as the operator of the car, had dominion and control over the contraband discovered within the car. Id. at 834. But since he was not the owner, additional incriminating circumstances had to be shown to prove constructive possession of the contraband. Id. The Court said that the location of the matchbox next to the driver's seat and the defendant's possession of the car for only 15 hours were both insufficient to show Ferrell had constructive possession of the contraband. Id. The State failed to prove additional actual incriminating circumstances to establish constructive possession. Id. at 835.
¶ 20. In the case sub judice, Fuente owned the car in which the contraband was found and was present when it was discovered. Although Fuente asserts he was unaware of the hidden marijuana, the State presented circumstantial evidence showing Fuente knew or should have known of its presence. The jury was presented with evidence that the automobile belonged to Fuente and that Moore may have placed the marijuana in Fuente's car. Fuente testified he had loaned his car to Moore for a few hours prior to their departure for Mississippi. Defense witnesses, Creech and Bario, testified they saw Moore load the bundles into Fuente's vehicle outside Fuente's presence. The jury *289 could have found Fuente was unaware of the marijuana.
¶ 21. The jury, however, was justified in finding that Fuente did have constructive possession over the marijuana found in his car. Fuente drove the car approximately eight hours before permitting Moore to drive. Fuente remained in the car as a passenger. The pungent smell of the marijuana permeated the inside of the vehicle and was readily detected by the officer when he entered the vehicle to retrieve the firearms. The jury could reasonably infer Fuente could smell the substance after traveling in the small car with Moore for approximately eight to ten hours. Further, Fuente's demeanor at the time the officer discovered the contraband was not consistent with lack of knowledge of its presence in the car. There was sufficient additional incriminating evidence to establish Fuente's constructive possession of the marijuana.
¶ 22. The jury is the sole judge of the credibility of the testimony. McClain v. State, 625 So.2d 774, 781 (Miss. 1993). The verdict clearly indicates that the jury did not find the defense witnesses credible. Creech's testimony was impeached by the testimony of R.D. Thaggard, an investigator with the district attorney's office, that Creech could not identify Moore from a photo line-up. On cross examination, Bario, Moore's former girlfriend, was questioned extensively about her motive for testifying. Further, both admitted they did not inform Fuente of Moore's alleged act until over a year later.
¶ 23. In view of Fuente's ownership and presence in the car where the bundles of marijuana were found and other incriminating circumstances, there was sufficient evidence to establish Fuente's constructive possession of the contraband. Pool v. State, 483 So.2d 331, 336-37 (Miss. 1986).
¶ 24. Proof of a defendant's intent may be, and often must be, based upon reasonable inferences drawn from circumstantial evidence. Jowers v. State, 593 So.2d 46, 47 (Miss. 1992). This Court concludes that the combination of the quantity of the marijuana discovered in Fuente's vehicle, the packaging of the marijuana consistent with drug trafficking, and the more than $400 taken from the person of Fuente was sufficient evidence for the jury to draw a reasonable inference of an intention to distribute. The jury was given a lesser-included-offense instruction on simple possession, but elected to convict him of the greater crime. Viewing the evidence in the light most favorable to the verdict, we do not conclude that the evidence was such that reasonable and fair-minded jurors could only find Fuente not guilty. McFee, 511 So.2d at 133-34. This assignment of error, therefore, is without merit.

II. DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO ELICIT EVIDENCE OF THE PRESENCE OF THE PARTIALLY SMOKED CIGARETTE AND ROLLING PAPERS?
¶ 25. Fuente contends that the trial court erred in allowing the State to elicit evidence of the partially smoked cigarette and rolling papers found in Fuente's car. "A trial judge has broad discretion as to the admissibility of evidence. Unless this discretion is so abused as to be prejudicial to the accused this Court will not reverse the lower court's ruling." Dye v. State, 498 So.2d 343, 344 (Miss. 1986) (citation omitted). Fuente argues the rolling papers and partially smoked cigarette, which was not tested to determine whether it contained marijuana, were irrelevant and, therefore, inadmissible at trial. We find the trial court did not abuse its discretion in allowing impeachment of Fuente's testimony regarding his lack of knowledge of the discovery of the rolling papers and partially smoked cigarette in his car.
Fuente testified on his own behalf:
Q. (By Mr. Leland) All right. The next day when y'all started to Mississippi, did you in anyway know that there was any marijuana in that car?

*290 A. I had no idea. I wouldn't have gone.
Q. Did he tell you there was any marijuana in that car?
A. No, sir, he did not.
Q. Had he ever explained to you about any kind of deal where he was taking marijuana to Mississippi to sell?
A. No, sir, he did not.
Q. If he would have told you, would you have allowed him to use your car?
A. No, sir. I would not allowed him to use my car and I would not have been there.
Q. You wouldn't have come?
A. No. Especially -
Q. All right. We have heard a lot of testimony from a deputy that the car was just full of the smell of marijuana. Did you smell any marijuana?
A. I didn't smell anything that was a strong order except for maybe body odor. I didn't smell marijuana, no, sir.
* * *
Q. Joe, let me ask you one more time, did you know that marijuana was in your car?
A. No, sir, I did not.
During the state's cross-examination of Fuente, the following exchange occurred:
Q. (By Mr. Davidson) Your lawyer asked you about the smell of marijuana that was in the car. Did you hear the police officer take the stand and testify that when he reached inside to get those pistols the smell of marijuana just about knocked him out?
A. Yes, sir, sure did.
Q. That it perfumed throughout the car?
A. Yes, sir, I did.
Q. Would you have any reason to believe a lie-or any reason why he would come in here and say something like that if it wasn't true?
A. I don't know why he would, but it is not true.
Q. It is just absolutely not true?
A. No, sir, it is not.
Q. You are positively, absolutely sure that there wasn't any marijuana in your car that you knew about; is that right?
A. There was no marijuana in my car that I had any knowledge of.
Q. Do you know whether or not the police officers at the time of the search of the car found any rolling papers laying in the console of your car?
A. No, sir. I never saw any rolling papers.
Q. Well, have you read the police report in this case; is that right?
A. About three years ago, yes.
* * *
Q. Before we get to that, were you aware that marijuana was found in your car other than these bags of marijuana?
A. No, sir.
* * *
Q. Well, do you know, Mr. Fuente, that a bud or small half of a joint was also found in your car?
A. No, sir. I don't know.
* * *
Q.... Were you aware that rolling papers were found on the console of your car?
A. No, sir, I was not.
Q. Were you aware that a half partially smoked joint was found in your car in the passenger compartment.
A. No, sir, I was not.
* * *
Q.... Well, doesn't [the offense report] say in here, Mr. Fuente, that rolling papers were found on your console *291 and that a partially smoked joint was found inside the passenger compartment?
A.... I don't remember reading that. It could have been but I do not remember reading it.
Q. Well, did you remember those rolling papers being in the car?
A. No, sir. I never saw any rolling papers.
Q. How about that half-smoked joint that was in your car?
A. No, sir. I never saw any half-smoked joint.
On redirect, Fuetne testified:
Q. Could [Charles Moore] have had rolling papers in his possession?
A. It's possible.
Q. Could they have been in your car without you knowing it?
A. There was (sic) no rolling papers in my car.
Q. That you knew about?
A. Yes, sir.
* * *
Q. Could Charles Moore have-do you think-is it possible Charles Moore smoked that marijuana cigarette while you were asleep?
A. It is possible.
¶ 26. In rebuttal, the State called Deputy Thomas, who testified that a pack of Zigzag rolling papers was found in the center console in open view and a partially smoked rolled cigarette was recovered from the floor board of the driver's side. Acknowledging the cigarette bud was not field tested to determine its contents, Deputy Thomas testified the cigarette smelled like marijuana, based on his experience. Defense counsel objected to the testimony asserting there had been no previous testimony that rolling papers and/or a partially smoked cigarette had been found in the car. The State asserted the items were irrelevant up to the point Fuente denied the rolling papers and partially smoked joint were discovered in the car. The trial court overruled Fuente's objection and allowed the items to be introduced into evidence.
¶ 27. Generally, evidence of a crime other than that charged in indictment is not admissible against the accused. Townsend v. State, 681 So.2d 497, 506 (Miss. 1996) (citations omitted). However, "[a]dmission of evidence and testimony about evidence is within the broad discretion of the trial court, requiring a reversal only on a demonstrable abuse of that discretion." Id. at 507.
¶ 28. Fuente testified he knew of no marijuana in his car. To impeach Fuente's testimony, the State confronted Fuente with the police report which stated that the rolling papers and partially smoked cigarette were found during the search of the car. Additionally, Deputy Thomas was called in rebuttal by the State to testify as to the location of the items in the car in an attempt to disprove Fuente's testimony that he had no knowledge of the presence of any marijuana in the car. "The purpose of rebuttal testimony is to explain, repel, counteract or disprove evidence by the adverse party." Williams v. State, 539 So.2d 1049, 1051 (Miss. 1989).
¶ 29. We cannot conclude, based on our review, that the trial court abused its discretion by admitting into evidence the partially smoked cigarette and rolling papers.

CONCLUSION
¶ 30. There being no merit to either issue raised in this appeal, we affirm.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF POSSESSION OF MORE THAN ONE KILOGRAM OF MARIJUANA WITH INTENT TO DISTRIBUTE AND SENTENCE OF TWENTY YEARS WITH TEN YEARS SUSPENDED IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*292 McMILLIN and THOMAS, P.JJ., COLEMAN, DIAZ, KING, LEE, PAYNE, and SOUTHWICK, JJ., CONCUR.
IRVING, J., NOT PARTICIPATING.