CARLTON, J.,
for the Court.
¶ 1. Cedric Catchings was convicted in the Hinds County Circuit Court for capital murder. He was sentenced to life in the custody of the Mississippi Department of Corrections (MDOC) without the possibility of parole.
¶ 2. Catchings argues on appeal that he was deprived of his fundamental right to a fair trial by repeated acts of prosecutorial misconduct. He further argues that the trial court erred in not allowing trial counsel to fully cross-examine a non-party witness regarding his two previous felony convictions. Catchings submits that these cumulative errors affected his fundamental rights guaranteed to him by the United States Constitution, thereby depriving him of a right to a fair trial. He asks this Court to reverse his conviction and sentence and remand his case to the trial court for a new trial. We find no error and affirm Catchings’s conviction and sentence.
FACTS
¶ 3. On March 3, 2007, at approximately 1:30 p.m., Officer Mark Coleman, with the Jackson Police Department, responded to a call about a shooting on Hanging Moss Circle. When Officer Coleman arrived on the scene, he noticed a young man slumped over in his car with a gunshot wound to the head. The young man was later identified as Kareen J. Redmond. Officer Coleman observed that Redmond had been shot six times — twice in the head, twice in the chest, once in the left leg, and once in the left arm. Officer Coleman also noticed that Redmond’s pants’ pockets were turned inside out. Other police units that later arrived on the scene found a nine-millimeter shell casing inside the car.
¶ 4. Sergeant Perry Tate of the Jackson Police Department testified that the police department subpoenaed phone records from Redmond’s cellular phone, and further investigation of these records led the police to obtain Catchings’s cell phone number and address.
¶ 5. Sergeant Tate testified that on March 6, 2007, he and other police officers went to Catchings’s home to locate him. Catchings’s wife consented to a search of the home, and the officers recovered nine-millimeter bullets, clips, and holster. Catchings was brought to police headquarters for questioning.
¶ 6. The police returned to the residence after obtaining a search warrant, which uncovered several weapons, including a Glock model 17 nine-millimeter handgun. At trial, Carl Fullilove, Jr., was tendered as an expert in the field of firearm-marking identification, and he testified that the casings found in Redmond’s car at the crime scene were fired by the Glock nine-millimeter handgun obtained from Catchings’s residence. The search also uncovered a baseball cap, shirt, shorts, and two pairs of tennis shoes, which Catchings admitted at trial he had purchased with Redmond’s credit card on the same day as the murder.
¶ 7. Two witnesses, Daniel Jeanty and Anthony Williams, who were barbecuing outside of a home near the crime scene, testified that immediately after they heard shots fired, they looked up and saw a man standing next to Redmond’s vehicle. They testified that the man looked around and then walked away from the vehicle. At a pretrial photographic lineup, Jeanty positively identified Catchings as the suspect near the ear. He also provided an in-court identification of Catchings.
¶ 8. On October 9, 2007, a Hinds County grand jury indicted Catchings for capital murder pursuant to Mississippi Code Annotated section 97 — 3—19(2)(e) (Rev.2006). *947 On May 21, 2008, a jury found Catchings guilty of capital murder, and the trial court sentenced Catchings to life, without possibility for parole, in the custody of the MDOC. On May 28, 2008, Catchings filed a post-trial motion for a judgment notwithstanding the verdict, which the trial court denied.
¶ 9. Catchings now timely appeals his conviction and sentence. Catchings raises the following assignments of error: (1) he was deprived of his fundamental right to a fair trial by repeated acts of prosecutorial misconduct; (2) the trial court erred by not allowing counsel to fully cross-examine Jeanty, a non-party witness, regarding his two previous felony convictions; and (3) cumulative error deprived him of his fundamental right to a fair trial. Finding no error, we affirm Catchings’s conviction and sentence.
DISCUSSION
I. Prosecutorial Misconduct
¶ 10. The standard of review for prose-cutorial misconduct has been clearly established by the Mississippi Supreme Court as follows: “Where prosecutorial misconduct endangers the fairness of a trial and the impartial administration of justice, reversal must follow.” Goodin v. State, 787 So.2d 639, 653 (¶ 41) (Miss.2001) (quoting Acevedo v. State, 467 So.2d 220, 226 (Miss.1985)).
A. “Send-A-Message” Arguments in Opening and Closing Statements
¶ 11. Catchings argues that the prosecutor committed reversible error when he made “send-a-message” arguments during his opening and closing statements. In turn, the State argues that the prosecutor’s comments did not constitute a “send-a-message” argument.
¶ 12. During the State’s opening statement, the following exchange occurred:
[PROSECUTOR]: This Defendant, after you listen to the evidence, exercised unlawfully the power to take another man out of this world. Defendant Catchings decided that Mr. Redmond would see no other day and the only just verdict in this case is guilty for capital murder because he murdered and robbed Mr. Redmond. The only just verdict for the City of Jackson, for Hinds County, for the State of Mississippi, the United States of America, and Mr. Redmond who is no longer here....
[DEFENSE COUNSEL]: Objection, Your Honor.
[THE COURT]: Hold on.
[DEFENSE COUNSEL]: Objection. Sending a message from the community.
[THE COURT]: You can rephrase, [Prosecutor]. Sustained.
[PROSECUTOR]: The only just verdict after the evidence is guilty of capital murder for Mr. Redmond who is no longer here and never will be.
¶ 13. Additionally, in the prosecutor’s closing statement, the following exchange occurred:
[PROSECUTOR]: Now, he said he’s from New Orleans. Now, they may do that in New Orleans[,] but he didn’t need to be bringing that mess here to Jackson, Mississippi. And it is up to the jury to find him guilty of capital murder to let him know that we’re not going to put up with that mess.
[DEFENSE COUNSEL]: Objection, Your Honor. Sending a message.
[THE COURT]: He said to let him know. It’s overruled. Proceed.
¶ 14. To determine whether an argument constitutes error, the supreme court uses a formula consisting of two threshold inquiries and a two-part test. *948 “The first threshold question is whether the defense counsel objected.” Brown v. State, 986 So.2d 270, 276(1113) (Miss.2008). The second threshold question is whether it appears under the circumstances that defense counsel invited the prosecutor’s comment. Id. at (¶ 14).
¶ 15. Next, a two-part test requires the court to evaluate: “(1) whether the remarks were improper, and (2) if so, whether the remarks prejudicially affected the accused’s rights.” Spicer v. State, 921 So.2d 292, 318 (¶ 55) (Miss.2006). In explaining the application of this test, the Spicer court stated the following:
[A] statement will not be improper simply because it sends a message that the community will not tolerate violence, but if it makes an appeal based on unproven sentiments of the community. These are statements which tend to cajole or coerce a jury to reach a verdict for the purpose of meeting public favor and not based on the evidence. Put another way, the focus of a prosecutor[’]s closing argument should be on the facts in evidence and not the broader problems of crime in society “lest the remediation of society’s problems distract jurors from the awesome responsibility with which they are charged.” It must be clear beyond a reasonable doubt, that absent the prosecutor’s comments, the jury could have found the defendant guilty. This goes beyond a finding of sufficient evidence to sustain a conviction.
See id. (internal citations omitted).
¶ 16. In applying the first threshold inquiry to the facts of the case, the record reflects that in both instances, defense counsel objected to the prosecutor’s remarks. See Brown, 986 So.2d at 276(¶ 13). In applying the second threshold question, we cannot find from the record that defense counsel invited the prosecutor’s remarks in the prosecutor’s opening and closing statements. See id. at (If 14).
1117. In evaluating the prosecutor’s remarks under the Spicer two-part test, we cannot find that the comments in question were either improper or that they prejudicially affected Catchings’s right to a fair trial. See Spicer, 921 So.2d at 318(¶ 55). Moreover, in reviewing the record, we find that it is “clear beyond a reasonable doubt, that absent the prosecutor’s comments [in question], the jury could have found the defendant guilty.” See id.
¶ 18. In turning again to the facts of the case, we note that Jeanty and Williams testified that they saw Catchings standing beside the victim’s car immediately after the witnesses heard shots fired. Catchings testified that he used the victim’s credit card to go on a shopping spree on the same day as the victim’s death. Upon searching Catchings’s house, law enforcement discovered the items purchased with the victim’s credit card, as well as several weapons, including the nine-millimeter handgun used to murder Redmond.
¶ 19. Therefore, because we cannot find that the prosecutor’s comments in the opening and closing statements were improper or that they prejudicially affected Catchings’s right to a fair trial, we find no merit to this issue.
B. Questioning of Jeanty
¶ 20. Catchings submits that the prosecutor’s questioning of Jeanty “was deliberately calculated to inflame the passions of the jury and had no basis in evidence.” In turn, the State argues that this issue lacks merit because defense counsel objected to the prosecutor’s question and because the trial court sustained the objection. The State argues that the trial court’s ruling remedied any possible prejudicial effect.
*949 ¶ 21. During the direct examination of Jeanty by the State, the following exchange occurred:
[PROSECUTOR]: Can you tell us if the suspect who shot, murdered, and robbed [Redmond], is he in the courtroom today?
[DEFENSE COUNSEL]: Objection to the form of the question.
[THE COURT]: Rephrase your question.
[PROSECUTOR]: The person that you saw running from the scene that day, do you see him in the courtroom today?
[JEANTY]: Yes, he’s over there.
¶22. Here, the trial court sustained defense counsel’s objection, and defense counsel did not ask for any further relief. When a judge sustains an objection, the remedial acts of the court are usually deemed sufficient to remove any prejudicial effect from the minds of jurors. Vickery v. State, 535 So.2d 1871, 1380 (Miss.1988) (citations omitted). The jury is presumed to have followed the directions of the trial judge. Id. This issue is without merit.
C. Comments by Detective Kent Daniels about Catchings’s Post-Arrest Silence
¶ 23. Catchings argues that when Detective Kent Daniels commented on Catchings’s post-arrest silence, this comment unfairly prejudiced Catchings’s right to a fair trial. As a result, Catchings alleges that the trial court committed reversible error by denying his post-trial request for a new trial. In turn, the State argues that Detective Daniels’s statement did not prejudice Catchings because the record does not reflect that Catchings received Miranda[1] warnings, and the prosecutor did not elicit the statement.
¶ 24. No evidence in the record reflects whether or not Catchings received Miranda warnings. See McGrone v. State, 807 So.2d 1232, 1234-35 (¶¶ 6-11) (Miss.2002). However, even if error had occurred by allowing the prosecution’s witness to comment on Catchings’s post-arrest silence, we hold that such error is harmless because of the overwhelming evidence of the defendant’s guilt. See Riddley v. State, 111 So.2d 31, 35 (¶ 12) (Miss.2000) (“errors including a violation of an accused’s constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming”).
D. Improper Questioning Concerning Phone Records Not in Evidence
¶ 25. Catchings alleges that the State’s attempts to question him regarding the content of telephone records that had not been admitted into evidence also gave rise to prosecutorial misconduct. At trial, the prosecutor asked Sergeant Tate about Redmond’s phone records, which the police department subpoenaed as part of the murder investigation. Sergeant Tate responded that the respective numbers of Catchings and Redmond showed up on each other’s telephone bills. The defense counsel objected to the testimony, arguing that the State did not introduce the phone records into evidence. The Court sustained the objection and allowed the State to lay a foundation to introduce Sergeant Tate’s testimony regarding the police department’s subpoena of Redmond’s phone records, which the detectives received during the regular course and scope of their investigation. Sergeant Tate testified that Redmond’s phone records led the detectives to Catchings’s phone records and, *950 subsequently, to Catchings’s location. Sergeant Tate further testified that detectives personally dialed the phone numbers o.n the phone records themselves. The trial court acknowledged that “the records were not admitted but the officer did give testimony based on his observation of the records and what he personally did such as dialing the phone numbers.”
¶26. During Catchings’s cross-examination, the defense counsel again objected to any mention of the phone records on the grounds that they were not admitted into evidence. The trial court sustained the objection and allowed the prosecutor to continue asking questions, but the court instructed him not to refer to the phone records.
¶ 27. In his argument, Catchings cites Williams v. State, 539 So.2d 1049, 1051-52 (Miss.1989), in which the Mississippi Supreme Court reversed a conviction where the prosecutor repeatedly referenced a videotape that was not in evidence. However, Williams can be distinguished from the case at hand. In Williams, the prosecutor on numerous occasions moved for the introduction of the videotape, which was a “blatant disregard” of the trial court’s ruling of inadmissibility. Id. at 1051. In this case, the prosecutor was allowed to lay a foundation to introduce Sergeant Tate’s testimony regarding how the police department had subpoenaed Redmond’s phone records in the course and scope of their investigation. The prosecutor’s later reference to the phone records during Catchings’s cross-examination was, therefore, not a “blatant disregard” of the trial court’s ruling, since testimony regarding the phone records previously had been admitted into evidence.
¶ 28. We find that since testimony regarding the phone records was already in evidence, Catchings’s right to a fair trial was not prejudiced by the prosecutor’s reference to the phone records. This issue lacks merit.
II. Cross-examination of Jeanty About Two Prior Felony Convictions
¶ 29. The standard of review governing the admission or exclusion of evidence is abuse of discretion. Williams v. State, 991 So.2d 598, 597(¶ 8) (Miss.2008) (citing Brown v. State, 969 So.2d 855, 860(¶ 13) (Miss.2007)). Thus, a “trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse the ruling.” Id. (quoting Shaw v. State, 915 So.2d 442, 445 (¶ 8) (Miss.2005)).
¶ 30. Catchings argues that he was denied his fundamental right to fully confront the witnesses against him when the trial court would not allow defense counsel to cross-examine Jeanty regarding his prior felony convictions. During the course of the trial, defense counsel attempted to question Jeanty about his prior criminal convictions for burglary and fleeing from a police officer. The court ruled that:
with respect to the rules, Rule 609 [of the Mississippi Rules of Evidence] states that this type of evidence can be allowed and the court can perform a balancing test in terms of whether or not the convictions would be more prejudicial or probative [of] the witness’s credibility. And the court has listened to this witness give testimony on direct and on cross and further the court has reviewed this matter and finds that the convictions of this witness are not relevant and that they would be more prejudicial than probative as to his credibility. Therefore [Jeanty’s] convictions will not be admissible.
*951 ¶ 31. Mississippi Rule of Evidence 609 provides the rule for attacking the credibility of a witness at trial. Under Rule 609(a)(1)(A)-(B), crimes punishable by death or imprisonment in excess of one year are allowed for impeachment, provided the court determines that the probative value of the evidence outweighs its prejudicial effect on a party. Rule 609(a)(2) pertains to crimes which reflect on a witness’s propensity for truthfulness — crimes involving either dishonesty or false statements. The supreme court holds that the plain language of Rule 609(a)(1) provides that as long as the prejudice/probative test stated in Rule 609(a)(1) is complied with, convictions resulting in death or imprisonment in excess of one year are admissible for impeachment purposes, whether or not the conviction relates to the witness’s veracity. White v. State, 785 So.2d 1059, 1061(¶ 6) (Miss.2001).
¶ 32. This court recognizes that a criminal defendant is afforded greater protection than the prosecution via the Fifth and Sixth Amendments to the United States Constitution. The Confrontation Clause of the Sixth Amendment to the United States Constitution provides: “In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]” See also Jordan v. State, 728 So.2d 1088, 1097(¶ 40) (Miss.1998). Given the constitutional right of a criminal defendant to confront those testifying against him, the Mississippi Supreme Court interprets Rule 609(a)(1) “as allowing full impeachment of prosecution witnesses without the requirement of a balancing test, except in extreme situations such as where the prosecution witness has a prior conviction that is both highly inflammatory and completely unrelated to the charges pending against the accused.” White, 785 So.2d at 1062 (¶ 10). Such a prior conviction should, therefore, be analyzed under a Rule 609(a)(1) probative/prejudicial balancing test. Id.
¶ 83. Jeanty’s convictions of burglary and fleeing from police are arguably unrelated to Catchings’s charge of capital murder. As such, the trial court had the discretion to conduct a probative/prejudicial balancing test despite the fact that the witness was a non-party. See id. The admissibility of evidence is within the discretion of the trial court, and absent abuse of that discretion, the trial court’s decision regarding the admissibility of evidence will not be disturbed on appeal. McCoy v. State, 820 So.2d.25, 31(¶ 15) (Miss.Ct.App.2002). When the trial court stays within-the parameters of the Mississippi Rules of Evidence, the decision to exclude or admit evidence will be afforded a high degree of deférence. Id.
¶ 34. In the event the trial court did err in excluding Jeanty’s prior convictions, this error was harmless. In Hammons v. State, 918 So.2d 62, 64(¶ 7) (Miss.2005), the supreme court held that the trial court erred in excluding evidence of a prior grand larceny conviction for the purposes of impeaching a non-party witness, “because the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice.” Despite finding error, the supreme court found that it was harmless: “for a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party. Error is reversible only where it is of such magnitude as to leave no doubt that the appellant was unduly prejudiced.” Id. at 65(¶ 10) (quoting Holladay v. Holladay, 776 So.2d 662, 672(¶ 40) (Miss.2000)).
¶ 35. Due to the overwhelming evidence against him, we find that Catchings was not prejudiced by the trial court’s exclusion of Jeanty’s prior convictions for im *952 peachment purposes. Therefore, this issue is without merit.
III. Cumulative Error
¶ 36. Catchings further argues that the cumulative effect of all errors committed during the trial deprived him of a fundamentally fair and impartial trial. Individual errors, not reversible in themselves, may combine with other errors to constitute reversible error. Jenkins v. State, 607 So.2d 1171, 1183-84 (Miss.1992). The standard by which the appellate "courts are to review the effect of cumulative errors on a defendant’s right to a fair trial has been established by the Mississippi Supreme Court as follows:
upon appellate review of eases in which [the appellate court] finds harmless error or any error which is not specifically found to be reversible in and of itself, [that court] shall have the discretion to determine, on a case-by-case basis, as to whether such error or errors, although not reversible when standing alone, may when considered cumulatively require reversal because of the resulting cumulative prejudicial effect.
Byrom v. State, 863 So.2d 836, 847 (¶ 13) (Miss.2003).
¶ 37. Relevant factors in considering whether individual errors are harmless or prejudicial in a claim of cumulative error include: (1) “whether the issue of innocence or guilt is close,” (2) “the quantity and character of the error,” and (3) “the gravity of the crime charged.” Ross v. State, 954 So.2d 968, 1018 (¶ 138) (Miss.2007) (citations omitted). Where there is not overwhelming evidence against a defendant, we are more inclined to view cumulative errors as prejudicial. Id.
¶ 38. In light of the overwhelming evidence of Catchings’s guilt, we hold that even if cumulative errors exist in the case at hand, such errors are not prejudicial to Catchings’s right to a fair trial. This issue is without merit.
¶ 39. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).