RANDOLPH, CHIEF JUSTICE, FOR THE COURT:
 

 ¶1. Eric Sharkey was found guilty of two counts of armed robbery and one count of possession of a firearm by a convicted felon and received three sentences-fifteen years for each armed robbery and ten years for possession, all to run concurrently. Sharkey appeals his convictions and sentences. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶2. Eric Sharkey, Madison Magee, and Marvin Bolden were indicted on two counts of armed robbery and possession of a firearm by a convicted felon. The State moved to amend Sharkey's indictment to reflect his status as a habitual offender.
 
 [1]
 
 No argument was raised in opposition. The trial court found Sharkey to be a habitual offender under Mississippi Code Section 99-19-81 (Rev. 2014). The State also was allowed to exclude the specific sentences of Sharkey's codefendants, both of whom had entered a guilty plea to the same crime.
 
 [2]
 

 ¶3. During Sharkey's trial, Don Patterson, Woodrow Berry, Bolden, and Magee gave essentially the same account of the facts. Berry was visiting Patterson when both men were robbed by Sharkey, Bolden, and Magee. Bolden came in Patterson's home and asked for beer, cigarettes, and change for a $ 100 bill. Patterson told him that he did not have change. Magee then entered Patterson's home with a gun and ordered Patterson and Berry to lie face down on the floor. When Sharkey came inside, Magee told him to check the back bedrooms. Sharkey attempted to remove a television from one of the back bedrooms, but it fell. When Sharkey came back into the living room, Patterson noticed that Sharkey had Patterson's pistol. Magee then told Sharkey to get the television from the living room. Sharkey took the television outside and then came back into the house. As Magee began looking for drugs, Sharkey told Magee to hurry up and to get out of the house. Magee took Patterson's watch, ring, wallet, and Berry's money. Patterson testified that, aside from those items and the television, a gun, whiskey, and medicine were also taken.
 

 ¶4. Patterson testified that Sharkey was the only person who entered his bedroom, where his pistol was located. Patterson and Berry testified that the three men were all working together. Both men testified that Sharkey had tattoos on his neck and face.
 

 ¶5. Kevin Hinds, a patrol lieutenant for the Stone County Sheriff's Department, testified that he responded to a call regarding an armed robbery. Hinds identified Sharkey as one of the men he had arrested for the armed robbery.
 

 ¶6. Captain Ray Boggs with the Stone County Sheriff's Office testified that he spoke with Patterson, who informed him that Patterson and Berry had been robbed at gunpoint. Patterson knew Bolden by name and was able to give a description of the other men. Once Boggs got to the scene of the arrest, he noticed a light-skinned, African-American male with tattoos on his face in the front passenger seat. Boggs, both at the scene and at trial, identified the passenger as Sharkey.
 

 ¶7. Boggs searched the vehicle and found a "Hi-Point 40 caliber pistol tucked in the [front passenger] seat." He also found a silver .380 pistol tucked between the front seats. In addition to the weapons, Boggs found bottles of medication prescribed to Patterson, a television, a watch, a diamond ring, and money. Boggs testified that Patterson came to the sheriff's office and identified his recovered items, including the .40 caliber pistol. Boggs showed Patterson and Berry photographic lineups, and both were able to identify Sharkey as one of the men who had robbed them.
 

 ¶8. Immediately before the State rested, the trial court read an agreed stipulation to the jury that Sharkey previously had been convicted of the felony uttering a forgery. Sharkey moved for a directed verdict on all three counts; his motion was overruled. Sharkey elected not to testify in his defense, and no other witnesses were called.
 

 ¶9. The jury was instructed and found Sharkey guilty of all three counts. Sharkey was found to be a habitual offender and was sentenced to a term of fifteen years for Count I, fifteen years for Count II, and ten years for Count III, to run concurrently. Sharkey's motions for a new trial or, alternatively, a judgment notwithstanding the verdict were denied.
 

 STATEMENT OF THE ISSUES
 

 ¶10. On appeal, Sharkey raises the following issues:
 

 I. WHETHER THE VENIRE WAS TAINTED, RENDERING SHARKEY'S TRIAL UNFAIR.
 

 II. WHETHER THE PROSECUTION'S GIVING NONVERBAL SIGNALS TO A STATE'S WITNESS DURING THAT WITNESS'S TESTIMONY WAS IMPROPER.
 

 III. WHETHER THE TRIAL COURT ERRED IN REFUSING A DURESS JURY INSTRUCTION.
 

 IV. WHETHER THE TRIAL COURT ERRED IN REFUSING LESSER-INCLUDED-OFFENSE INSTRUCTIONS FOR ROBBERY OR LARCENY.
 

 ANALYSIS
 

 I. WHETHER THE VENIRE WAS TAINTED, RENDERING SHARKEY'S TRIAL UNFAIR.
 

 ¶11. Sharkey argues that the trial court erred in denying his motion for mistrial. He urges that he is entitled to a new trial, because during voir dire the jurors were informed that witnesses Bolden and Magee had been indicted, had pled guilty, and were serving time for the same crime for which Sharkey was on trial. One venire member responded that he would have "a little trouble getting over the statement about the other two being convicted. ..." The State interrupted and asked to approach the bench. During the bench conference, the venire member indicated that he had already formed an opinion about Sharkey's guilt. He was struck for cause.
 

 ¶12. Sharkey moved for a mistrial. In opposing the motion, the State argued that (1) the statement was made during voir dire and was not evidence, (2) a guilty plea was less prejudicial than a conviction by a jury, and (3) the State anticipated calling both men to testify. The State informed the court that it would not ask either witness about their guilty pleas unless Sharkey inquired about them on cross-examination.
 

 ¶13. The trial court found that the State should not have mentioned the guilty pleas in voir dire and directed the State not to reference the pleas during examination. The trial court denied the motion for mistrial. Sharkey did not question either Bolden or Magee about their guilty pleas, and the State did not mention the pleas during their testimony.
 

 ¶14. This Court employs an abuse-of-discretion standard of review to determine whether a trial judge erred in denying a request for a mistrial.
 
 Pitchford v. State
 
 ,
 
 45 So.3d 216
 
 , 240 (Miss. 2010). A trial judge need declare a mistrial only "when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case."
 

 Id.
 

 (quoting
 
 Parks v. State
 
 ,
 
 930 So.2d 383
 
 , 386 (Miss. 2006) ). Likewise, the standard of review for a post-trial motion is abuse of discretion.
 
 Young v. State
 
 ,
 
 236 So.3d 49
 
 , 55 (Miss. 2017). "This Court will not order a new trial unless it is convinced that the verdict so contradicts the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice."
 

 Id.
 

 (citing
 
 McNeal v. State
 
 ,
 
 617 So.2d 999
 
 , 1009 (Miss. 1993) ). The jury's verdict was supported by the overwhelming evidence adduced at trial.
 

 ¶15. We find no abuse of discretion in the trial court's denial of the motion for mistrial. The statement was made during voir dire, and the only juror who told the court that he could not be impartial in light of the two accomplices' convictions was excused for cause. When Magee and Bolden were called as witnesses, their pleas and sentences were not discussed. Sharkey failed to present evidence that he
 had suffered substantial or irreparable prejudice.
 

 II. WHETHER THE PROSECUTION'S GIVING NONVERBAL SIGNALS TO A STATE'S WITNESS DURING THAT WITNESS'S TESTIMONY WAS IMPROPER.
 

 ¶16. Sharkey claims that the prosecutor erred by giving a nonverbal cue to a witness during the witness's testimony. During direct examination of Patterson by the State, the following exchange occurred:
 

 Q. Could you see anything on the defendant that stood out to you?
 

 A. No.
 

 Q. How were you able - was there any distinctive markings on him?
 

 A. The tattoos.
 

 MR. DAVIS: Objection to the State leading by making facial - to get testimony out of the witness, Your Honor.
 

 THE COURT: That's overruled. Go ahead.
 

 BY MR. BURRELL:
 

 Q. What did you see on the defendant that stood out to you?
 

 A. The tattoos.
 

 ¶17. Sharkey relies on
 
 Williams v. State
 
 ,
 
 539 So.2d 1049
 
 (Miss. 1989), for the proposition that "[a]n attorney should never signal to a witness, regardless of how innocent the action may be, because this leaves with the jury the impression of covertness and partiality between the witness and the signalling party."
 
 Williams
 
 ,
 
 539 So.2d at 1053
 
 . In
 
 Williams
 
 , the record was clear that the prosecutor admittedly made a hand gesture, signaling his witness to "go ahead and now give the information that the Court had previously ruled as inadmissible. ..."
 

 Id.
 

 at 1052
 
 .
 

 ¶18. Today's case is distinguishable, because the record does not reflect that the prosecutor gave any hand signals to the witness in front of the jury. We find that the trial court did not abuse its discretion in overruling Sharkey's objection.
 

 III. WHETHER THE TRIAL COURT ERRED IN REFUSING A DURESS JURY INSTRUCTION.
 

 ¶19. The standard of review for issues involving jury instructions is well-established. Jury instructions must be read as a whole to determine if the instructions were proper.
 
 Milano v. State
 
 ,
 
 790 So.2d 179
 
 , 184 (Miss. 2001). Jury instructions must fairly announce the law of the case and not create an injustice against the defendant.
 

 Id.
 

 This rule is summed up as follows: "In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results."
 

 Id.
 

 See
 

 Adams v. State
 
 ,
 
 772 So.2d 1010
 
 , 1016 (Miss. 2000).
 
 See also
 

 Davis v. State
 
 ,
 
 18 So.3d 842
 
 , 847 (Miss. 2009).
 

 ¶20. Sharkey offered a proposed jury instruction on his affirmative defense of duress. Sharkey contends that he did not willingly agree to participate in the robbery and complied with Magee's commands out of fear of being shot. Sharkey submits that duress was a theory of his defense; therefore, he was entitled to proposed jury instruction D-18. In denying the instruction, the trial court noted that no evidence was offered that Sharkey was afraid of Magee.
 

 ¶21. While a defendant has a right to jury instructions that present his theory of the case, that right is not absolute.
 
 Davis v. State
 
 ,
 
 18 So.3d 842
 
 , 847 (Miss. 2009). Jury instructions are within the discretion of the trial court.
 

 Id.
 

 The trial court may refuse an instruction if it is without foundation in the evidence.
 

 Id.
 

 In
 
 Banyard v. State
 
 , this Court adopted the following four-part test for duress:
 

 (1) the defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that he had not recklessly or negligently placed himself in the situation; (3) that he had no reasonable legal alternative to violating the law; (4) that a direct causal relationship may be reasonably anticipated between the criminal action and the avoidance of harm.
 

 Banyard v. State
 
 ,
 
 47 So.3d 676
 
 , 682 (Miss. 2010).
 

 ¶22. While Sharkey's attorney suggested in his opening statement and closing argument that Sharkey was in fear of Magee and committed the robbery under duress, no evidence was offered to support that suggestion. Sharkey failed to offer any evidence that he was threatened in any way while he was committing the crime. Because Sharkey failed to introduce evidence to support a defense of duress, he was not entitled to a jury instruction on duress.
 

 IV. WHETHER THE TRIAL COURT ERRED IN REFUSING LESSER-INCLUDED-OFFENSE INSTRUCTIONS FOR ROBBERY OR LARCENY.
 

 ¶23. Sharkey argues that the trial court erred in denying his proposed jury instructions on simple robbery and petit larceny. Sharkey contends that he did not know a robbery was going to occur and that he did not actively join in the robbery. Sharkey argues that he is entitled to a new trial because the jury was not allowed to consider the lesser-included offenses.
 

 ¶24. With regard to Sharkey's claim that he was entitled to a lesser-included-offense instruction, this Court conducts a
 
 de novo
 
 review, because this is a question of law.
 
 Downs v. State
 
 ,
 
 962 So.2d 1255
 
 , 1258 (Miss. 2007) (citing
 
 State v. Shaw
 
 ,
 
 880 So.2d 296
 
 , 298 (Miss. 2004) ). "To be entitled to a lesser-included-offense instruction, '... the defendant must point to evidence in the record from which a jury reasonably could find the defendant not guilty of the crime with which the defendant is charged and at the same time find the defendant guilty of the 'lesser offense.' ' "
 
 Thomas v. State
 
 ,
 
 48 So.3d 460
 
 , 472 (Miss. 2010) (quoting
 
 Brazzle v. State
 
 ,
 
 13 So.3d 810
 
 , 815-16 (Miss. 2009) ). "[T]his Court has repeatedly held that a lesser-included offense instruction should not be indiscriminately granted, but rather should be submitted to the jury only where there is an evidentiary basis in the record."
 
 McCune v. State
 
 ,
 
 989 So.2d 310
 
 , 318 (Miss. 2008) (quoting
 
 Strickland v. State
 
 ,
 
 980 So.2d 908
 
 , 922 (Miss. 2008) ). A lesser-included-offense instruction may not "be based purely on speculation or surmise."
 
 Wilson v. State
 
 ,
 
 639 So.2d 1326
 
 , 1329 (Miss. 1994).
 

 ¶25. The crime of armed robbery is codified at Mississippi Code Section 97-3-79, which provides, in pertinent part,
 

 Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery...
 

 Miss. Code Ann. § 97-3-79
 
 (Rev. 2014). This Court has identified the following essential elements of armed robbery: "(1) a felonious taking or attempt to take, (2) from the person or from the presence, (3) the personal property of another, (4) against his will, (5) by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition
 of a deadly weapon."
 
 Wales v. State
 
 ,
 
 73 So.3d 1113
 
 , 1122 (Miss. 2011). Simple robbery does not require the "exhibition of a deadly weapon."
 
 See
 

 Miss. Code Ann. § 97-3-73
 
 (Rev. 2014). "If any person shall feloniously take, steal and carry away any personal property of another under the value of One Thousand Dollars ($ 1,000.00), he shall be guilty of petit larceny. ..."
 
 Miss. Code Ann. § 97-17-43
 
 (Rev. 2014).
 

 ¶26. The jury was instructed on robbery with a deadly weapon. Sharkey contends that the trial court erred in refusing to give jury instructions D-10 and D-12 on the lesser-included offense of simple robbery, an offense that does not require the exhibition of a deadly weapon.
 
 See
 

 Miss. Code Ann. § 97-3-73
 
 . Sharkey argues that he did not know a robbery was going to occur and points to testimony that the robbery was not discussed in the car before reaching Patterson's home. However, even if the robbery was not discussed, Sharkey still actively participate in its commission once it began. Sharkey also claims that the court erred in refusing to give jury instructions D-16 and D-17 on the lesser-included offense of larceny, an offense involving the theft of property valued at less than $ 1,000.
 
 See
 

 Miss. Code Ann. § 97-17-43
 
 . Sharkey contends that the proof was lacking that he was an aider and abettor in the crime and that the pistol and television he took were not shown to have an aggregate value of $ 1,000.
 

 ¶27. During the trial, no conflicting testimony was adduced about (1) whether a robbery occurred, (2) whether the victims were held at gunpoint, and (3) who was involved-Magee, Bolden, and Sharkey. "Participation in an armed robbery is sufficient to make one a principal in the crime regardless of whether that participant was the person holding the weapon."
 
 Strickland v. State
 
 ,
 
 980 So.2d 908
 
 , 922 (Miss. 2008). No factual basis supporting an instruction that a simple robbery, a robbery
 
 without
 
 a deadly weapon, occurred or that a mere larceny occurred. The trial court did not err in denying the lesser-included-offense instructions.
 

 CONCLUSION
 

 ¶28. Finding no error, we affirm Sharkey's convictions and sentences.
 

 ¶29.
 
 AFFIRMED.
 

 COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. MAXWELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, C.J., BEAM, CHAMBERLIN AND GRIFFIS, JJ.; COLEMAN, J., JOINS IN PART. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.
 

 Sharkey was previously convicted of uttering a forgery, two counts of possession of a controlled substance, and burglary.
 

 Magee was sentenced as a habitual offender to a term of twelve years, and Bolden was sentenced to a term of ten years.