# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00759-COA

**DONTARIOUS VONTAE DAVIS A/K/A**              **APPELLANT**
**"MAN-MAN"**

**v.**

**STATE OF MISSISSIPPI**                                     **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/28/2021 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | WEBSTER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/06/2022 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.    A man robbed a fitness center and kidnapped a woman. He was charged with one count of armed robbery and one count of kidnapping. A jury convicted him of both. He now appeals.

## FACTS AND PROCEDURAL HISTORY

¶2.    Caroline Love was working the night shift at a fitness center in Webster County, expecting a visit from a familiar elderly patron. As the door opened, she called out only to receive silence in return. Awaiting a friendly face, she saw Dontarious Davis instead, who demanded, "Give me the money." Fighting back panic, Love gave Davis the forty dollars

the fitness center had stored away. He was not satisfied. Davis shifted his focus to Love's own money and ordered her to give him any cash she had. When she showed him she did not have any, he spotted her debit card and declared, "We're going to the bank."

¶3. With one hand in his pocket and the other clutching her arm, Davis led Love to her car and climbed into the passenger seat. Love, fearing Davis to be "pointing a gun" at her, did as she was told and took him to a drive-through ATM. There, Love "played stupid" with the machine, forcing Davis to lean into view of the camera while he tried to hurry her up. She reluctantly pulled out $200. But as Davis shifted, Love noticed he was, in fact, wielding a screwdriver, not a gun. When a car pulled in behind them, Love threw her debit card out of the window and tried to signal it.

¶4. With Davis grabbing her, she presented him with an ultimatum: take the $200 and leave, or stay and risk capture. Davis took the money and ran. Love sped off to the local Sheriff's office.

¶5. After analyzing multiple photo line-ups, Love clearly identified Davis as the robber. The police department also posted a photo from the ATM on Facebook in which China Bingham, Davis' longtime friend, recognized him. Police officers arrested Davis, and a grand jury subsequently indicted him on charges of armed robbery and kidnapping.

¶6. At trial, the State asked Police Chief Greg Hunter about his course of action following Bingham's tip that Davis was the robber. He answered, "Well, at that point in time, I was -- I did not realize [Davis] was out of prison. We had sent him several years back for burglary."

¶7. Davis' counsel immediately objected, and the trial court sent the jury out of the

courtroom. The trial court then questioned the State: "Mr. Howie, can you explain why the Court should not grant a mistrial at this time?" The trial court made it clear that it did "not like what just happened at all" and reprimanded Chief Hunter, claiming it did not "think that was by accident that you said that . . . ."

¶8. Counsel for Davis immediately asked for a mistrial. In response, the State claimed it "did discuss [with Chief Hunter] what could and could not be said in open court concerning any prior convictions this Defendant may have had," and so was not attempting to elicit the statement.

¶9. In search of a solution, the State suggested "admonish[ing] the jury to strike . . . [Chief Hunter's statement] and move on," but Davis' counsel argued he did not "think a jury instruction" could rectify the situation. Weighing its options, the trial court elected "to bring the jury out and then individually ask each one of them if they will disregard anything that was said about [Davis] . . . ." The trial court also made it clear that if a single juror could not disregard, it would "declare a mistrial."

¶10. Each juror indicated that they would be able to disregard the statement, and the trial resumed. Prior to jury deliberations, the trial court once again instructed the jury to treat the statement "as if it did not happen."

¶11. The jury found Davis guilty of armed robbery and kidnapping. The trial court then sentenced him to serve forty-five years for the armed robbery in the custody of the Mississippi Department of Corrections and twenty years for the kidnapping to run consecutively to his charge of armed robbery. Davis now appeals for relief in the form of

a new trial.

## DISCUSSION

### The trial court did not abuse its discretion in denying Davis' motion for a mistrial.

¶12. The trial court denied Davis' motion for a mistrial following Chief Hunter's statement concerning Davis' prior criminal history. Davis presents one issue on appeal. He argues "the trial court erred in not declaring a mistrial," citing Chief Hunter's disclosure of his past burglary conviction and his belief that this disclosure was intentional.

¶13. In outlining the conditions for a mistrial, Mississippi Rule of Criminal Procedure 23.5 states:

> Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by a party, a party's attorney(s), or someone acting at the behest of a party or a party's attorney(s), resulting in substantial and irreparable prejudice to the movant's case.
>
> Upon motion of a party or its own motion, the court may declare a mistrial if:
>
> (a) The trial cannot proceed in conformity with the law; or
> (b) It appears there is no reasonable probability of the jury's agreement upon a verdict.

¶14. In weighing whether a remark warrants a mistrial, "a trial judge is best suited to determine the prejudicial effect of an objectionable remark and is given considerable discretion in deciding whether the remark is so prejudicial as to merit a mistrial." *Dorsey v. State*, 310 So. 3d 1238, 1249 (¶36) (Miss. Ct. App. 2021) (internal quotation marks omitted). "Unless serious and irreparable damage results from an improper comment, the judge should

4

admonish the jury then and there to disregard the improper comment." *Id.* (internal quotation marks omitted).

¶15. This court "employs an abuse-of-discretion standard of review to determine whether a trial judge erred in denying a request for a mistrial." *Sharkey v. State*, 265 So. 3d 151, 155 (¶14) (Miss. 2019). "A trial judge need declare a mistrial only when there is an error in the proceedings resulting in *substantial and irreparable prejudice* to the defendant's case." *Id.* (internal quotation mark omitted) (emphasis added).

¶16. This Court "ha[s] repeatedly declined to reverse the denial of a motion for a mistrial in cases where prior crimes or convictions were inadvertently brought before the jury." *Bankhead v. State*, 299 So. 3d 853, 859 (¶22) (Miss. Ct. App. 2020). To illustrate, "[i]n situations where the witness refers briefly to another crime, and the testimony was not purposely elicited by the district attorney to prove the defendant's character, no reversible error occurs." *Id.* at 858 (¶21) (internal quotation marks omitted). "Absent unusual circumstances, where [an] objection is sustained to improper questioning or testimony, and the jury is admonished to disregard the question or testimony, we will not find error." *Moore v. State*, 64 So. 3d 542, 546 (¶16) (Miss. Ct. App. 2011).

¶17. As a threshold matter, we agree with the trial court that the police chief's statement about Davis' prior criminal history was improper. However, merely because the statement was improper does not halt our inquiry, which is centered on whether the improper statement was "purposely elicited by the district attorney to prove the defendant's character," if there was a sustained objection, and the jury was properly instructed.

¶18. In support of his argument for reversal, Davis argues the trial was irreparably prejudiced because "the witness . . . mentioned that [he] had been in prison and . . . had been convicted of burglary." The record shows Chief Hunter only mentioned Davis' past conviction once and did not further elaborate on it, as he was halted by the defense counsel's objection. After being called up to the Bench, the State declared to the trial court that it had specifically "discuss[ed] what could and could not be said in open court concerning any prior convictions this Defendant may have had" with witnesses for the prosecution. In response, the trial court asked "did y'all advise the witnesses that they were not to discuss this?" The State responded, "We did, Your Honor."

¶19. The record also shows Chief Hunter's statement was not a direct answer to the State's line of questioning. After the witness testified a tip had come in from Facebook identifying Davis as the perpetrator, he was asked "At that point in time, what did you do?" Instead of responding to this question, the police chief offered "Well, at that point in time, I was -- I did not realize [Davis] was out of prison. We had sent him several years back for burglary."

¶20. Since the State never directly asked Chief Hunter about Davis' prior criminal history, Chief Hunter's statement was a volunteered response. *See Moore*, 64 So. 3d at 546 (¶17) (finding no evidence of prosecutorial misconduct when the witness volunteered the information and "[t]he question was not stated to elicit an objectionable answer . . ."). This answer was also non-responsive to the question. *See Hodges v. State*, 912 So. 2d 730, 779 (¶114) (Miss. 2005) (discussing "that a witness' reference to another possible crime committed by the defendants did not warrant a reversal where the witness alluded to other

6

crimes only once and the prosecution did not deliberately ask . . . whether the defendants had been involved in other offenses") (negative history omitted). Under our jurisprudence, this does not require reversal.[1]

¶21. And after the improper statement, the trial court polled each juror as to whether he or she would be able to disregard Chief Hunter's statement. Each juror declared he or she would. This is the exact procedure established by precedent. As a result, Davis cannot show the improper statement caused "substantial and irreparable prejudice" to his trial. *Sharkey*, 265 So. 3d at 155 (¶14). "It is to be presumed that the jury understood that the trial court disapproved of the argument, and that the jury would not let such argument operate in opposition to the ruling of the court." *Dabbs v. Richardson*, 137 Miss. 789, 102 So. 769, 771 (1925); *see also Flora v. State*, 925 So. 2d 797, 805 (¶10) (Miss. 2006) (holding that "[w]e must presume the jury followed the directions of the trial judge"); *Reynolds v. State*, 585 So. 2d 753, 755 (Miss. 1991) (finding that the trial judge "is in the best position to determine if a remark is truly prejudicial, [and] is given considerable discretion to determine whether a remark creates irreparable prejudice necessitating a mistrial").

¶22. Given this precedent, to the extent that the witness's improper statement tainted the

---

[1] This determination is fact-specific. For example, if there had been any indication that the State had coordinated with the witness, or had knowledge the police chief intended to testify in this fashion regardless of the State's cautioning, it would be the trial court's prerogative to grant a mistrial. For as Davis argues, the interests of the police chief and the State in prosecuting him were aligned; Chief Hunter was the State's witness, both are within the Executive branch, and the defendant argues that his statements could only have been used to further the State's case in prosecuting him. *See Smith v. Hood*, 238 So. 3d 1125, 1127 (¶10) (Miss. 2018) (prosecutorial offices are within the "executive department of government"); *In re Anderson*, 447 So. 2d 1275, 1276 (Miss. 1984) ("police officers and other law enforcement officials are members of the executive branch").

proceedings, any harm was cured by the quick action of the Defendant's counsel in objecting and the trial court's deft use of a jury instruction to calm the situation's volatility.

¶23. Nonetheless, Davis argues that two cases require a reversal. In one, a State's witness made a statement regarding a defendant's prior arrest. *Murshid v. State*, 326 So. 3d 489, 499 (¶31) (Miss. Ct. App. 2021). The witness revealed that "the DEA arrested [him] in 2013," but made no mention of the charge that led to the arrest. *Id.* The defendant moved for a mistrial, but the trial court denied the motion. *Id.* On appeal, we found "[o]ur review of the record reflects no evidence that [the] single reference to [the] 2013 arrest substantially or irreparably prejudiced [the defendant's] case." *Id.* at 500 (¶33).

¶24. Davis argues that, unlike in *Murshid*, in his case Chief Hunter *specifically* mentioned his prior burglary conviction. Yet as in *Murshid*, the State did not intentionally elicit improper testimony. On the contrary, Chief Hunter was only asked about the tip he had received. He was not asked where Davis was or where he thought he might be. In response, he volunteered the information about Davis' past conviction. And mirroring *Murshid*, the trial court instructed the jury to disregard Chief Hunter's statement.

¶25. In another case cited by Davis, the State mistakenly showed the jury part of a video that had been ruled inadmissible. *Bankhead*, 299 So. 3d at 859 (¶23). The video contained evidence of prior crimes in which the defendant "freely admitted to hitting licks every day and reluctantly admitted to buying drugs." *Id.* After seeing the video, "[t]he jury was instructed that any evidence of a prior conviction was stricken from the record and should not be considered." *Id.* at 858 (¶19).

8

¶26. In contrast to the mistake in *Bankhead*, Davis argues Chief Hunter's statement was intentional. Yet our precedent asks whether the *State,* not the *witness*, intended to introduce evidence of a prior conviction. Just as in *Bankhead*, the record establishes the State did not make a deliberate attempt to introduce the inadmissible evidence. And when the State is not to blame for the introduction of the tainted evidence, the correct jury instruction can excise any prejudice the statement creates. *Id.* at 859 (¶21) (holding that "where . . . the testimony was not purposely elicited by the district attorney to prove the defendant's character, no reversible error occurs").

## CONCLUSION

¶27. Davis has not shown the improper statement by the witness caused substantial and irreparable prejudice to his trial. The trial court was within its discretion to allow the trial to proceed after polling the jury regarding the statement.

¶28. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., GREENLEE AND WESTBROOKS, JJ. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

**McDONALD, J., SPECIALLY CONCURRING:**

¶29. Although I concur with the majority in affirming Davis's conviction, I write separately to express my concern about the blatant violation of Rule 404(b) of the Mississippi Rules of Evidence, which the prohibits the admission of prior bad-acts evidence that occurred in this case.

9

¶30. Rule 404 provides:

(b) Crimes, Wrongs, or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

MRE 404(b)(1). In this case, there was nothing in the State's questioning that required the chief of police to answer as he did. When testifying about how he suspected Dontarious Davis, Hunter said:

Well, at that point in time, I was - - I did not realize he was out of prison. We had sent him several years back for burglary.

The defense objected, and the trial court itself recognized the impermissible nature of Hunter's answer and the gravity of its effect by immediately excusing the jury and asking why a mistrial should not be granted. I agree with the circuit court and the majority that Chief Hunter's statement was personally intentional, especially in light of the State's undisputed representation to the court that it had instructed all its witnesses, including Hunter, what could and could not be said in open court concerning any prior convictions Davis had. The defense felt that a Rule 105 written instruction to the jury[2] about the matter could not cure the violation and would only emphasize the testimony. I appreciate the dilemma faced by the circuit court, which then called the jury back in, noted to them that a

---

[2] Mississippi Rule of Evidence 105 provides:

If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, unless expressly waived or rebutted, shall restrict the evidence to its proper scope, contemporaneously instruct the jury accordingly, and give a written instruction if requested.

reference had been made that Davis "had maybe been in prison before or something like that," and polled each juror to determine that each could disregard that testimony. But this only amplified the testimony further to the jury.[3]

¶31. What concerns me is the nature of Hunter's testimony and Hunter's disregard for the court's instruction and Davis's rights. The majority cites *Dorsey v. State*, 310 So. 3d 1238, 1249 (¶36) (Miss. Ct. App. 2021), for the proposition that the trial court has the discretion to determine the prejudicial effect of an objectionable remark, and our review then is merely for an abuse of that discretion. However, *Dorsey* dealt with an objectionable remark by the prosecution in closing arguments where we have long noted that attorneys are given considerable latitude. *Id.* at (¶37). Nor was what happened here comparable to an innocent remark made by a prospective juror during voir dire that he would have trouble getting over the fact that potential witnesses had pled guilty and were serving time for the same crime as the defendant, which the supreme court said did not warrant a mistrial. *Sharkey v. State*, 265 So. 3d 151, 155 (¶11) (Miss. 2019). In this case, the objection was to the admission of testimony by an experienced law enforcement witness, which referenced not only Davis's prior incarceration but also the reason for that incarceration, i.e., for a similar crime of

---

[3] However, at the end of the trial, the defense itself may have drawn attention to Hunter's testimony by proposing the following jury instruction which the court granted:

> The Court instructs the Jury that you will disregard testimony which you were ordered by the Judge to disregard and told the Judge you could each disregard. You will not consider it in any way as evidence or anything else. It is as if it did not happen.

But the defense may have thought it had to submit such an instruction, given how the matter was handled during the trial.

11

burglary. Such testimony in my opinion did result in substantial and irreparable prejudice to Davis's case. Moreover, had the State intentionally elicited this testimony, there would be little doubt that the trial court would have granted a mistrial. In the proper case, I think the intentional misconduct of a witness should warrant no less of a result.

¶32. Despite my concerns for the seriousness of the testimony inadvertently presented to the jury, I would nonetheless agree with the majority in affirming Davis's conviction because any error in the court's handling of Hunter's testimony was harmless. "An error is harmless only when it is apparent on the face of the record that a fair minded jury could have arrived at no verdict other than that of guilty." *Young v. State*, 981 So. 2d 308, 313 (¶17) (Miss. Ct. App. 2007). In this case, there was sufficient evidence to support Davis's conviction regardless of Hunter's testimony, including the testimony of Davis's victim, Love, who saw his face during the robbery and identified him and his distinctive tattoos, as well as the photograph from the ATM's camera that captured Davis in the car with his victim, Love.

¶33. Accordingly, I respectfully specially concur with the majority in affirming Davis's conviction.

**BARNES, C.J., GREENLEE AND WESTBROOKS, JJ., JOIN THIS OPINION.**