# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00031-COA

**RODERICK JAMES HOPES A/K/A RODERICK HOPES**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

DATE OF JUDGMENT:                    11/22/2021
TRIAL JUDGE:                          HON. JON MARK WEATHERS
COURT FROM WHICH APPEALED:   FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                                       BY: MOLLIE MARIE McMILLIN
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                                       BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:             PATRICIA A. THOMAS BURCHELL
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                          AFFIRMED - 03/07/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., McCARTY AND EMFINGER, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     The defendant in this case was accused of robbing a man by pretending to be law enforcement.  He stole a handgun from the man's waistband and $1,900 from his wallet.  Finding that his convictions did not violate the Double Jeopardy Clause, that the trial court properly refused to give his proposed jury instruction, and that there was sufficient evidence to support his armed robbery conviction, we affirm.

## FACTS

¶2.     Steven McLain drove to the Sunset Inn in Hattiesburg with his girlfriend and her two-year-old daughter to book a room for the night.  With $2,300 in cash in his wallet, he stuck

a loaded .40-caliber Smith & Wesson pistol "in the waistband of [his] pants" when he got out of the car. As he began walking toward the check-in window, he saw Roderick Hopes and a woman "pull up in a white Mercedes."

¶3.　Hopes "flashed a badge" at McLain and told him to "come here." Unbeknownst to McLain, the badge was fake. Afraid that Hopes was an actual law enforcement officer, McLain complied. Hopes then proceeded to "slam" McLain against the car. Hopes then took the pistol out of McLain's waistband.

¶4.　In character as a law enforcement officer, Hopes asked McLain if he had a permit to carry a concealed weapon and why he was carrying a weapon in the first place. Hopes snatched McLain's wallet out of his pocket and tossed it to the woman in the Mercedes. Hopes then told the woman to "run his name." Hopes stated the woman was his "partner" and threatened she would "blow [McLain's] brains out" if he moved a muscle.

¶5.　So McLain didn't move. He stood still with his hands on the hood of the car. Hopes then opened the car door and asked the woman, "Is he clear?" The woman responded, "He's fine," and gave the wallet to Hopes. He told McLain, "Today is your lucky day," and stuffed the wallet back into McLain's pocket. McLain would later testify $1,900 was taken from his wallet.

¶6.　Hopes then walked him to the side of the building and told him to get on his knees. McLain later testified he was "terrified [he] was going to get shot." Hopes told McLain to "count down from ten Mississippi" as he ran to his car and drove away.

¶7.　Officers then arrived at the scene to take statements from McLain and other witnesses.

2

Because McLain had a prior felony conviction, he was subsequently charged and plead guilty to possession of a firearm by a felon. As a part of his plea agreement, he agreed to testify at Hopes' trial.

¶8. Hopes was indicted on three charges: one count of armed robbery, one count of possession of a firearm by a felon, and one count of possession of a stolen firearm.

## PROCEDURAL HISTORY

¶9. The jury first heard from McLain. He explained what happened after Hopes flashed the fake law enforcement badge at him.

> At that moment I walked over to him thinking that I was already in trouble and he grabbed me. At the point of him grabbing me, slamming me against the car, he's asking me did I have a concealed permit. At that time he's also taking the gun off my waistband.

¶10. When asked where was the gun after it was taken from his waistband, McLain responded, "[Hopes] had it in his hand in fact." The victim also stated that when Hopes had him pinned against the car, McLain "felt the resemblance of a gun on Hopes' waistband." McLain then explained Hopes took $1,900 and left him on his knees in fear for his life.

¶11. McLain agreed Hopes never displayed a firearm upon approaching him. McLain also stated, "To my knowledge he didn't have a gun." However, McLain also told the jury that he "definitely felt a weapon," although he "didn't see a weapon," and clarified that Hopes first took the gun and then the wallet.

¶12. Next, McLain's girlfriend testified. She stated once the couple pulled up to the hotel, she "leaned [her] head over" and "went to sleep." The girlfriend told the jury she later "came to" and saw a "black male holding a badge and a wallet." She said he told her he was about

3

to "take Steven McLain to jail because he was in possession of a concealed firearm" and that "if I f****** moved a muscle, me and my child were . . . going too."

¶13.　She said she then "got over into the driver's seat" to "see better." She said, "I saw Steven, he had Steven McLain up against the passenger doors." Next, the girlfriend stated Hopes "opened the passenger door and him and the woman inside of it . . . were talking." She said she "believe[d] they took all of the money out of the wallet." She stated she then heard Hopes tell her boyfriend to "go around the corner." The girlfriend testified she saw her boyfriend "running around the corner telling me to call the cops because he was just robbed."

¶14.　The jury also heard a hotel worker's testimony. He testified he was checking in guests on the date of the incident. He stated he saw a "car in the front of the canopy," and when he came back, "there was a second white car behind them." He then testified he saw Hopes "pushing the other gentleman to the car." He said, "Hopes had his hands behind the back as if . . . he was about to arrest him or something." He also told the jury that Hopes said "he was an officer and . . . had a badge." He said Hopes attempted to "create like an authority type, like trying to scare the other person." He then testified, "I was scared, too, as was the female in the front and they were yelling at each other."

¶15.　Lastly, the detective who interviewed Hopes after the incident testified. Detective Kelly Gardner stated that "during the interview [Hopes] admitted to everything and said he was wrong for what he did."

¶16.　The State then admitted the footage of the interview. From the video, the jury heard

Hopes state, "I did it. I was wrong." He then described his actions as "stupid" and said it was the "dumbest thing I did in my entire life."

¶17. From the video, the jury then heard Hopes' version of events. He stated he had a "toy badge" that he carried for his comedy skits, as Hopes claimed he was a stand-up comedian. He said he told the woman in the car to "watch this." He stated he then walked up to McLain, told him to "come here," and then showed him the toy badge. The jury then heard Hopes say he asked the victim, "Do you want to go to f****** jail." Hopes then said the victim became apologetic, stating "I'm sorry" several times and that he "didn't want to go to jail."

¶18. Next, Hopes said he instructed the victim, "[P]ut your hands on top of the car." Hopes said after McLain put his hands on the car, he "[took] the pistol and threw it inside the floor of the Benz." The jury then heard Hopes say he asked the victim, "[W]here is your wallet at?" He said McLain "pulls out his wallet," and he "grabbed the wallet and threw it inside the car to her." In the video, Hopes claimed that the woman in the car then "t[ook] all the money out of his wallet."

¶19. The jury also heard Hopes recall that McLain had told him, "My wife and kids are in the car." Hopes told Detective Gardner he "made [McLain] stand against the building" and told him, "Get on your knees." Regarding the victim's gun, Hopes stated, "I'm not going to give you your pistol back because you're not going to shoot at me." He then said he and the woman "pulled off" and later "threw the pistol out the window." Hopes said the woman later told him, "we got money." He said the woman told him there was "$1,500." He said he told

5

her, "[G]ive me $500 and you keep the stack." Detective Gardner then asked, "Where did you throw the gun at?" Hopes replied, "[S]omewhere in the trees coming down [Highway] 49."

¶20. After the testimony, the defense proposed a jury instruction on a lesser-included offense of grand larceny. The trial judge refused to give it, stating, "I don't believe it's supported or has any evidentiary foundation." Specifically, the judge said there was "nothing in the record from Mr. McLain or Mr. Hopes" that could be anything but armed robbery since "the first thing Mr. Hopes got was the gun," which he "knew . . . was a .40-caliber Smith & Wesson" and "knew the gun was loaded." Finding that no "reasonable jury could find [Hopes] guilty of a lesser included offense of grand larceny instruction," the trial court refused the proposed instruction.

¶21. The jury found Hopes guilty of one count of armed robbery, one count of possession of a firearm by a felon, and one count of possession of a stolen firearm. The trial court sentenced Hopes to serve at least twenty years in custody.

**DISCUSSION**

**I.      Hopes' ineffective-assistance-of-counsel claim is more appropriate for post-conviction collateral proceedings.**

¶22. Hopes argues his Sixth Amendment rights were violated because he and the victim were represented by public defenders from the same office. He specifically argues this created a conflict of interest that resulted in ineffective assistance of counsel.

¶23. Hopes is not the first appellant to raise this issue before our Court. Just as Hopes does here, two years ago an appellant convicted of a crime in Forrest County claimed that there

6

was an inherent conflict of interest in the county's public defender office. *Hinton v. State*, 311 So. 3d 1213, 1215 (¶9) (Miss. Ct. App. 2020). However, "the parties [did] not stipulate[] that the record [was] adequate to allow the appellate court to make a finding on Hinton's constitutional claim of ineffective assistance of counsel." *Id*. at 1215 (¶¶8-9). Our Court stated, "Moreover, our review of the record as it stands before us does not affirmatively show that Hinton's representation was ineffective." *Id*. at (¶10). However, we acknowledged, though, that "Hinton ought to be given the opportunity to make a record on this issue in a properly filed application for leave to file a motion for post-conviction relief pursuant to Mississippi Code Annotated section 99-39-7 (Rev. 2015), if she so chooses." *Id.* at (¶10).

¶24. Just as we concluded in *Hinton*, the record here is not sufficient to review this claim on direct appeal. As we did in that case, "we dismiss [Hopes'] claim of ineffective assistance of counsel without prejudice to [his] right to raise it in a motion for post-conviction collateral relief." *Id*. at 1216 (¶11).

## II. Hopes' convictions do not violate the Double Jeopardy Clause.

¶25. Claiming the elements overlap, Hopes contends his convictions for both armed robbery and possession of a stolen firearm violate the Double Jeopardy Clause.

¶26. "We apply a de novo standard of review to claims of double jeopardy." *Stewart v. State*, 228 So. 3d 872, 876 (¶11) (Miss. Ct. App. 2017).

¶27. "When addressing a double-jeopardy claim, this Court applies the 'same elements' test laid out in *Blockburger v. United States*, 284 U.S. 299, 304 (1932)." *Moore v. State*, 112 So. 3d 1084, 1087 (¶7) (Miss. Ct. App. 2013). "Under this test, even though a defendant may

be charged with violation of two separate statutes, we look to see whether each statutory provision requires proof of a fact which the other does not." *Id*. For a conviction to withstand the 'same elements' test, each offense must contain an element not contained in the other." *Id*.

¶28. Also, "Mississippi has long recognized that separate offenses, though committed under a common nucleus of operative fact, do not present a legal impediment to multiple prosecutions under the Double Jeopardy Clause of both the federal and the state constitutions." *Graham v. State*, 151 So. 3d 242, 248 (¶18) (Miss. Ct. App. 2014). Furthermore, "an overt act toward the commission of one crime can constitute a separate independent crime." *May v. State*, 267 So. 3d 803, 807 (¶14) (Miss. Ct. App. 2018).

¶29. "The elements of armed robbery are: (1) a felonious taking or attempt to take; (2) from the person or from the presence; (3) the personal property of another; (4) against his will; (5) by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon." *Cowart v. State*, 178 So. 3d 651, 666 (¶42) (Miss. 2015) (citing Miss. Code Ann. § 97-3-79 (Rev. 2014)).

¶30. Under the stolen firearms statute, "[i]t is unlawful for any person knowingly or intentionally to possess, receive, retain, acquire or obtain possession or dispose of a stolen firearm or attempt to possess, receive, retain, acquire or obtain possession or dispose of a stolen firearm." Miss. Code Ann. § 97-37-35(1) (Rev. 2014).

¶31. These two crimes are vastly different. To prove possession of a stolen firearm, the State had to prove Hopes possessed any stolen firearm. But to prove armed robbery, the

8

State had to prove several different elements that included showing Hopes took McLain's property by the exhibition of a deadly weapon. Those elements do not overlap with the statute governing possession of a stolen firearm. Because the State had to prove a different set of facts under each crime, Hopes' right to be free from double jeopardy was not violated.

¶32. Furthermore, while Hopes contends one fact—the theft of McLain's gun—was the integral part of the State's armed robbery case, this does not automatically result in a Double Jeopardy Clause violation. The test by which this Court determines whether such a violation exists is whether each offense contains an element not contained in the other.

¶33. Because Hopes' charges contained several elements not contained in the other, his right against double jeopardy was not violated.

### III. The trial court properly refused Hopes' instruction on the lesser-included offense of grand larceny.

¶34. Hopes argues the trial court erred by refusing a jury instruction on the lesser-included offense of grand larceny. Specifically, he argues he took McLain's money and gun through trickery and not violence.

¶35. "The standard of review for a claim that a defendant was entitled to a lesser-included-offense instruction is de novo, as this is a question of law." *Eldridge v. State*, 232 So. 3d 767, 769 (¶8) (Miss. Ct. App. 2017). "To be entitled to a lesser-included-offense instruction, the defendant must point to evidence in the record from which a jury reasonably could find the defendant not guilty of the crime with which the defendant is charged and at the same time find the defendant guilty of the 'lesser offense.'" *Sharkey v. State*, 265 So. 3d 151, 157 (¶24) (Miss. 2019) (other internal quotation marks omitted). As with all

9

instructions, "[a] lesser-offense instruction can be refused if it is without foundation in the evidence." *McCune v. State*, 989 So. 2d 310, 319 (¶17) (Miss. 2008).

¶36.     Under the armed robbery statute, a person must have taken the property of another by "violence to his person or by putting such person in fear of immediate injury to his person by exhibition of a deadly weapon." Miss. Code Ann. § 97-3-79 (Rev. 2014). However, a person commits grand larceny by "taking and carrying away, feloniously, the personal property of another." Miss. Code Ann. § 97-17-41 (Rev. 2014).

¶37.     The Mississippi Supreme Court has previously upheld the refusal of an instruction in a similar case where a defendant was convicted of two counts of armed robbery. *Sharkey*, 265 So. 3d at 153 (¶2). At trial, there was "no conflicting testimony" about three core facts—"whether a robbery occurred," "whether the victims were held at gunpoint," and "who was involved[.]" *Id*. at 158 (¶27). As a result, the trial court denied requests for lesser-included instructions for simple robbery. *Id*. at (¶26). The Supreme Court held that since there was "[n]o factual basis supporting an instruction" of a lesser crime, the instructions were properly refused. *Id*. at (¶27).

¶38.     Like *Sharkey*, much of the proof in this case was uncontested. At the outset, McLain believed Hopes was a law enforcement officer after he flashed a badge. A reasonable person would then believe that Hopes was armed; indeed, Hopes acted upon this reasonable belief by further threatening the victim that if he acted up, his "partner" would "blow his brains out." And after slamming McLain up against the car, Hopes immediately yanked the loaded .40-caliber Smith & Wesson out of his waistband. McLain testified he also believed he could

10

feel another gun in Hopes' waistband.

¶39.  Therefore even if Hopes had not been armed at the time the event began, he *became* armed by virtue of seizing McLain's loaded handgun.  Indeed, at this point the victim could even have thought he was under threat by at least three guns—the one he knew was loaded, which Hopes took from him, the gun McLain reasonably believed Hopes would have as a law enforcement officer and thought he felt, and the gun the alleged other law enforcement "partner" would possess, which Hopes told McLain could be used to "blow his brains out." Furthermore, it was only after Hopes took the loaded handgun from McLain that Hopes then took the wallet, subsequently marching McLain down the parking lot and forcing him to his knees, at which point the victim believed he was going to be killed.

¶40.  As the trial court concluded, there was no evidence to support Hopes' fanciful claim that he committed a robbery-by-trick rather than a robbery carried out by the use of a deadly weapon.  As a result, the instruction was properly refused as having no basis in the evidence.

## IV.  Sufficient evidence supported Hopes' armed robbery conviction.

¶41.  Hopes contends there was insufficient evidence to support his armed robbery conviction.  Specifically, he argues there was no evidence he committed robbery by exhibiting a handgun.

¶42.  "This Court reviews a sufficiency-of-the-evidence challenge de novo." *Holder v. State*, 348 So. 3d 370, 373 (¶7) (Miss. Ct. App. 2022).

¶43.  "[T]he conviction must be affirmed if there was sufficient evidence for any rational trier of fact to have rendered a guilty verdict." *Id*.  "For a claim of insufficient evidence, this

11

Court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. "In evaluating the sufficiency of the evidence, the issue on appeal is not whether the reviewing court would have found the defendant guilty." *Id*. "The jury is the sole fact-finder in this case, and we do not sit as a new jury and reevaluate the evidence; if the jury is convinced beyond a reasonable doubt, we can require no more." *Id*.

¶44.　In a similar armed robbery case, a man stopped at a store to add air to his tire. *Brent v. State*, 296 So. 3d 42, 45 (¶5) (Miss. 2020). As he was bent down, "[a] man approached [him] from behind, undetected, and pressed something 'like the barrel of a gun' against the back of [his] head." *Id*. The man demanded, "[G]ive me your money," and threatened to shoot the victim. *Id*. Because he did not have any money, the man ordered him to drive to an ATM. *Id*. at (¶6) Out of fear for his life, he complied. *Id*. After they arrived at the ATM, the victim immediately ran into a nearby store and told the employees to call the police. *Id*. The defendant was found guilty of one count of armed robbery, one count of kidnapping, and one count of possession of a firearm by a felon. *Id*. at 46 (¶11).

¶45.　On appeal, he argued the State failed to prove beyond a reasonable doubt he used or exhibited a deadly weapon. *Id*. at 47 (¶16). The Supreme Court stated, "[W]e held that for purposes of armed robbery, when a defendant makes an overt act, a victim does not have to actually see a deadly weapon. So long as the victim reasonably believes that the defendant had a deadly weapon and the defendant makes an overt act the statute is satisfied." *Id*. at (¶17). Relying on the victim's testimony that he felt something like the barrel of the gun and

feared for his life, the Court ruled that a reasonable juror could have found the State met its burden of proof. *Id*. at (¶18). Therefore, the Court affirmed the defendant's conviction. *Id*. at 53 (¶47).

¶46.    In the present case, there is undisputed evidence Hopes flashed a badge at the victim and made him stand with his hands against the car. It is also undisputed Hopes took McLain's loaded gun. Critically, the jury saw the interview footage of Hopes admitting he "did it." In the footage, he stated he took the victim's gun and at a later point asked him where was his wallet. This line of testimony dovetailed with the victim's testimony on redirect that Hopes took the gun and then the wallet. McLain further testified that when Hopes pinned him to the car, he felt the resemblance of a gun in his waistband. The jury also heard Hopes admit that he made the victim get on his knees. And the victim testified he was terrified Hopes would shoot him.

¶47.    The evidence shows McLain knew Hopes had at least one deadly weapon and believed there were two more. This is because Hopes not only took the victim's gun, but Hopes also impersonated a law enforcement officer and threatened that his partner would blow the victim's brains out. This evidence stretches beyond the facts in *Brent* where the victim simply *believed* there was a deadly weapon. But even under those facts there was enough evidence to support an armed robbery conviction.

¶48.    Furthermore, while Hopes argues he did not exhibit a firearm before taking McLain's property, that finding is not required under our precedent. *Id*. at 47 (¶16).

¶49.    Therefore, there was sufficient evidence to support Hopes' armed robbery conviction.

13

**CONCLUSION**

¶50. We find Hopes' claim of ineffective assistance of counsel is more appropriate for post-conviction collateral proceedings. Next, we find Hopes' right against double jeopardy was not violated. We also find the trial court did not err in refusing Hopes' jury instruction on the lesser-included offense of grand larceny. Lastly, we find there was sufficient evidence supporting his armed robbery conviction.

¶51. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.**